Thank you. Adam Levine for Appellant Karyn Davenport. May it please the Court. On January 16, 2008, Karyn Davenport signed a retention incentive agreement with her employer, Albridge Solutions. That agreement provided that so long as she satisfactorily performed her assignments and stayed through a certain date with the company, which had recently been acquired by a new corporate parent, she would receive what was recalled a retention incentive payment. Three months later, she was terminated for events which had occurred 16 years before the agreement was agreed. I thought she was terminated because she couldn't get bonded. That is the statement that was made. It was but the reason that the company claimed that she wasn't bonded was based upon events 16 years earlier. Whether she was Was there evidence that she could get bonded? The evidence was that the answer is it was not known. It was not set forth in the record. The person who made the decision never inquired. Karyn Davenport never met this person. This person was in Philadelphia with an ultimate corporate parent, and the evidence on the record was that Vice President Legates, who made the decision, didn't even know the name of the bonding company and never made inquiries as to whether or not she could be bonded. To answer the question. Scalia, did the decisionmaker have anything in front of him or her that suggested that this 16-year-old conviction would ipso facto mean no bonding? First, let's be very clear. The answer is no. Start with a yes or no. Yes. The answer is no, but let's be clear. This was not a conviction. It was a probation before judgment, which under Maryland law is, by definition, not a conviction. So I did want to clarify that. But the direct answer to the Court's question is no. She had nothing before her to suggest that Karyn could not be bonded, and there was no inquiry made of a bonding company to ascertain whether Karyn could be bonded. Did the retention agreement define cause in terms of prospective or retrospective? The answer is it did not define it in terms of a retrospective. However, this is what is referred to, of course, as a condition precedent, the exercise of the power of termination for cause. By its very nature, conditions precedent are prospective-looking, not retrospective. So your answer is that it didn't define cause either prospectively or retrospectively, but the nature of the description of the events that would lead to termination for cause clearly infer or infer that they would be prospective. That is correct. And the reason is this, because she was hired by Albridge. She underwent a background investigation by Albridge prior to being given and entering into the retention incentive agreement. Therefore, any reasonable person would go to her. I guess I'm, you know, we have this discussion about prospective or retrospective. If, in fact, in the future she can't get bonded, is that prospective or retrospective? It would be prospective if she could not be bonded in the future. However, bonding Which is when she would be doing the work. I mean, if being bonded is necessary to the work and you can't get bonding, that's something that is in the future and impairs you from doing the work. That would be correct if, in fact, bonding were necessary and if, in fact, bonding were incorporated in the language of the agreement. She was a software salesman. Software salesman. But they have terminated Ms. Davenport for failing to disclose the Maryland, quote, conviction. I understand your position is it's not a conviction, but they could terminate her for the item of dispute, if you will. To answer the Court's question very directly, yes, they could terminate her for anything under the sun because the agreement itself provides that she is an at-will employee. So their ability to terminate or not terminate based upon bonding really has nothing to do with the contract. The issue is Right, but the counsel, if you read Judge Hawkins' question to ask if there was cause for the termination, which affects whether she gets the money, like, is there cause? The answer is, if phrased that way, Judge, no, there is not cause because a condition precedent, as I was attempting to state a minute ago, is always forward-looking. If parties entering into a contract wish to eliminate the possibility of an event in the past Let me ask you, if I could ask you one question on that, because I don't really understand the prospective retroactive distinction. Let's say they hire her, and after they hire her, they find out that she was convicted 20 years earlier for embezzlement. Now, are you saying they would have to let her work there until she embezzled something after the date of her hire that couldn't terminate her for cause? That is not what I am saying. However, the scenario you have presented is exactly the scenario which is addressed in Restatement Section 154, which is mistake of fact, and where Albridge conducts its own background investigation and determines that, based upon the background  Well, what is your answer to my question? They could terminate her, or they could not terminate her, for cause, if they found out she had previously been an embezzler 20 years earlier? The answer to the question is, under the way the contract is written, they could not terminate her for cause. They could terminate her, but they would still have to pay her. But you're saying they could not terminate her for cause? Now, why would that make sense, that an employer can't terminate a person for cause if they've committed the dishonest act of embezzling at any time, even in the remote past? Because with regard to retrospective, as it were, to prospective-looking events, if it is important to the parties that there be nothing in the past that would rise to the level so as to permit the employer to exercise a power of termination, that is where, under freedom of contract, parties do and frequently ask for what is called a warranty. You know, there's an article in the paper the other day about a woman who busted out of a state prison 25 years ago, serving a drug charge or something like that, somewhere in the Midwest, moved to California, changed her name, got married, had three kids, and 25 years later, she gets arrested, they find out where she is, and she's sent back to prison. Are you saying that, in other words, she physically couldn't be present for work in the situation we have here? Are you saying that that would be retrospective and not covered by this agreement? No, that is not what I'm saying, because first and foremost, Karen Davenport did fill out an application, and I don't believe anybody would stand before this that resume fraud would not fall within the definition, any reasonable definition of cause. However, the point I was attempting to make a moment ago is, if it were important to Albridge that she have nothing in her past that might have fallen outside the questions asked on the application or fallen outside the background investigation that Albridge performed, Albridge could have and should have asked for a warranty. Davenport warrants that there is nothing in her past. There are no convictions, et cetera. The parties, under principles of freedom of contract, which is addressed in the special concurring opinion of Judge Appell out of Iowa that I've cited in the current case, clearly set forth that parties can set the limits that they wish upon a contract, but it's incumbent upon them to do so. If this were important to them. Doesn't the employee manual require her to be bonded? I'm sorry? Doesn't the employee manual make it clear that they have those bonding requirements? First and foremost, the employee manual was not given to Karen until after. But the answer is no. I'm sorry. Let me ask you directly. No. The – something that is posted on their intranet, not internet, intranet, company-wide makes mention of it, but not – and if I'm mistaken, I'm mistaken, but for a software salesperson, there is no legitimate business need for bonding by a software salesman. It was not required that she be bonded when she was hired by Albridge. This is something that the parent simply desires. By the way, I would like to reserve, unless the Court has additional questions, my remaining 45 seconds. Okay. You got it. Thank you. Good morning, Your Honors. Ivan Novich, representing Albridge Solutions and PFPC, Inc. May it please the Court. The issue in this case, the controlling issue, is whether Ms. Davenport was terminated for cause under the employee bonus agreement that she signed. Under 2.0i of that agreement, it defines cause to include dishonesty and fraud. On page 2 of that two-page agreement, it says that the standards used to determine dishonesty and fraud are the same standards generally applicable to all PFPC employees. That's what she agreed to. It was undisputed in the record that the bonding requirement policy was a standard universally applied to all of the employees, including two other employees who were determined not to be bondable as a result of the FBI background fingerprint check, which takes about six weeks before the results come in. And they were not allowed to work for PFPC. Your opponent says this was not a conviction at all. What's your response? That is correct, Your Honor. It wasn't a conviction, but the bonding requirement policy, which is patterned after the Federal Deposit Insurance Act, includes pretrial diversion programs. And here, Ms. Davenport received probation before judgment, which under the FDIC advisory opinion includes a ---- For passing a bad check? Yes, Your Honor. She actually pled no low contender, which, if Your Honor looks at the bonding requirement, which Ms. Davenport signed in acknowledging that she would had access to during her employment with PNC before she was terminated, it specifically says, examples of dishonesty and fraudulent acts include passing bad checks no matter how long ago and entering into a pretrial diversion program or pleading no contest. It is actually that specific. Who wrote this agreement? The agreement was written by PNC. Did Ms. Davenport have any part in this drafting? Ms. Davenport's testimony was she did not. She received the agreement. The answer is no. That's correct, Your Honor. And is the definition of cause ambiguous? I don't believe so, Your Honor, and ---- Is it ambiguous in terms of prospective versus retrospective? No, Your Honor. The answer is no, and because it says PNC's standards will apply, and the bonding requirement is undisputed is a standard, and it actually specifically says no matter how long ago you've been ---- you've entered a pretrial diversion program for passing bad checks. It's actually that specific. Now, was there any attempt made to obtain a bond for her? No, Your Honor. There was no effort made to obtain the waiver. PNC's policy is that it does not make applications to the FDIC for waivers. It does not do that for anyone. She was treated ---- she wasn't treated arbitrarily and capriciously. She was treated consistent with how the other employees were treated. No waivers were sought for the other two employees who also were not bondable. This is more information than I was asking for, and I am perhaps not phrasing the question right. Normally when we talk about a bond, there is a ---- a bond is an insurance policy, right? Correct, Your Honor. And you ---- it's like buying insurance policy. You go to the insurance company and you say, I've got an employee, it could be life insurance, it could be fidelity bond, it could be any number of things, right? And where does this requirement for the bond come in? Is this something that's in the insurance company's requirements, or was it something PNC had in its ---- how did that work? It's a longstanding PNC policy that the parent applies to all its subsidiaries across the board. Your Honor, I don't know this for a fact, but I'm assuming that it is based on the FDIA, which has very similar language, which prohibits banks and parent holding companies like PNC from employing people who have been convicted or entered pretrial diversion programs, who are crimes that involve dishonesty or breaches of trust. So this is a PNC policy, which is based, you think, on the FDIC policy. But I was asking about the insurance company. I suppose you could get a bond for somebody who had some blemish on their record. There's no evidence in the record to suggest that, Your Honor. Your Honor, with respect to the FDIA, if I could just add one important point, that if under, actually under the statute, which is 12 U.S.C. 1829, if the parent company employs somebody who is in violation, who has entered into a pretrial diversion program for a crime involving dishonesty, like passing a bad check, the fines include up to a million dollars a day by the regulators. Yeah, counsel, if I may ask you a question, does the Federal Deposit Insurance Act require a bank holding company not to have any subsidiary, even a subsidiary in a non-banking field, that has an employee who's not bondable? It doesn't require that, Your Honor. The only issue I would say is it's not quite clear what Ms. Davenport's duties if they would, PNC treats her as an employee of PNC. So the parent treats the subsidiaries as its employees, so PNC takes the position that they are employed and therefore are covered by the FBIA. So, at the end of the day, do I correctly understand that the reason she was terminated for cause is because she couldn't be bonded, but neither the parent company nor the subsidiary made any effort to determine whether she could be bonded? She was not. Start with a yes or no. If Your Honor is asking me, was there an application made to the insurance company, no, there was no application made, nor was there any attempt to seek a waiver. That's not PNC's policy. They don't do that. They don't do that for anybody. I think I understand, but at the risk of repeating, the reason that the parent company now relies upon as defining cause for Ms. Davenport's termination is that she couldn't be bonded, although the record shows that the company made no effort to determine whether she could be bonded. She wasn't bondable under their policy, Your Honor. I understand what you're saying. And maybe let me ask it this way. Describe what effort, if any, the parent or the subsidiary companies made to determine whether Ms. Davenport could be bonded in the face of this bad check diversion offense. There were no additional steps taken outside. They did not contact the FDIC. They did not seek a waiver from anybody. That is the answer. I think I understand your question, your answer. Thank you. Counsel, is it your position they would need the FDIC to make some waiver apart from convincing an insurance company to write the bond? Yes, Your Honor. OK. Thank you. Thank you, Your Honors. In my brief of 45 seconds, I would like to point out the following. First and foremost, under the Federal Deposit Insurance Act, the requirements spoken of only apply to institution-affiliated parties. Karen Davenport is a software salesman, salesperson for a subsidiary. It does not meet the statutory or regulatory definition. Why not? Why not? I don't understand. Because institution-affiliated party is defined by statute and regulation. It talks about the trustees, the control officers of the bank or the bank holding company itself, not a software salesman, a software company. What about an employee of the bank? Because, I mean, you're opposing counsel arguments that argues that PNC treated her as its employee. Your Honor, that is not actually supported by the record. The W-2s, which are in the record in evidence, say that she was an employee of Albridge Solution, and under Nevada law, an employee of a subsidiary is not an employee of the parent corporation. In this case, it's governed by Nevada law. I believe I'm out of time. Okay. Thank you. Thank you. The case is argued. We'll stand submitted. Chief, I wonder if we could take a break either now or after Evans, then. Why don't we do it now? We'll have a brief recess. Thank you.
judges: Kozinski, Hawkins, Gould